## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CHARLES THORNTON,

     **Plaintiff,**

     **v.**                         Civil Action No. 3:24cv499

PIEDMONT REGIONAL JAIL
AUTHORITY, *et al.,*

     **Defendants.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Piedmont Regional Jail Authority's ("PRJA") Motion to Dismiss (the "Motion"). (ECF No. 22.)[1] Plaintiff Charles Thornton responded in opposition to the Motion, (ECF No. 28), and Piedmont replied, (ECF No. 30).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant the Motion. (ECF No. 22.)

### I. Factual and Procedural Background[2]

In considering the Motion, (ECF No. 22), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Mr. Thornton. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Amended Complaint includes four attached exhibits. (ECF Nos. 20-1–20-4.) The second exhibit is a video

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

exhibit on a flash drive of the incident at the center of the Amended Complaint. (*See* ECF No. 20-2.)

It is appropriate to consider a video attached as an exhibit to a complaint at the motion to dismiss stage where the video is integral to the plaintiff's claim.[3] *See, e.g.*, *Boyapati v. Loudoun Cnty. Sch. Bd.*, No. 120cv01075 (AJT) , 2021 WL 943112, at *1 (E.D. Va. Feb. 19, 2021) (while considering motion to dismiss, court took facts from the amended complaint, its attached exhibits, and its hyperlinked video, "all of which [were] integral to the [p]laintiff's claim."). Because neither party disputes the authenticity of the video, the Court will consider Exhibit 2 to the Amended Complaint without converting the Motion into one for summary judgment. *See Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Federal Rule of Civil Procedure 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."). To the extent the video exhibit contradicts any bare allegation of the Amended Complaint, the former will prevail. *See Fayetteville Invs. v. Com.*

---

[3] The United States Court of Appeals for the Fourth Circuit recently discussed the standard for considering a video *submitted* at the motion to dismiss stage. *See Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024) ("a district court can consider a video submitted at the motion to dismiss stage when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible.") (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)). Here, however, the video was available to the Court *before* the motion to dismiss stage, rendering *Doriety* persuasive at best.

2

*Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.").

### A. **Factual Allegations**

Mr. Thornton "was incarcerated at Piedmont Regional Jail from July 26, 2022 to December 10, 2022." (ECF No. 20 ¶ 13.)  Before his incarceration, Mr. Thornton "suffered from a mood disorder, for which he was prescribed . . . 800mgs of Seroquel to be taken daily." (ECF No. 20 ¶ 14.)  While incarcerated at Piedmont Regional Jail, "Seroquel was distributed to [Mr. Thornton] on a daily basis at the pharmacy counter run by Wellpath[4]." (ECF No. 20 ¶ 16.)

"Agents of Wellpath and Piedmont Regional Jail[5] put a 'crush and float' order in for Mr. Thornton's Seroquel solely based on a remote history of cheeking medication", meaning Seroquel was administered to Mr. Thornton "in crushed form" rather than "in pill form." (ECF No. 20 ¶¶ 17, 20.)  "Piedmont Regional Jail and Wellpath had a blanket policy and custom to crush any medication if there is any suspicion of history of a Plaintiff diverting the medication." (ECF No. 20 ¶ 19.)  Mr. Thornton further asserts in a conclusory fashion that "it is inadvisable and a violation of the medical standard of care to crush certain medication." (ECF No. 20 ¶ 21.)

After taking his prescribed Seroquel in crushed form, "Mr. Thornton immediately began complaining to agents of Wellpath and Piedmont Regional Jail that taking the medication in

---

[4] "Defendant Wellpath, LLC ('Wellpath') was a limited liability company under contract with Piedmont Regional Jail [A]uthority to provide medical care to inmates and pre-trial detainees held at the Jail." (ECF No. 20 ¶ 7.)

[5] Although the Amended Complaint contains several references to "Piedmont Regional Jail", Mr. Thornton filed suit against Piedmont Regional Jail Authority, which is a separate but related entity. (ECF No. 20 ¶ 6 ("Defendant Piedmont Regional Jail Authority is a regional jail authority established pursuant to the provisions of Section 53.1 of the Code of Virginia to manage the Piedmont Regional Jail."))  Piedmont Regional Jail Authority is the proper defendant.

crushed form made him feel fatigue, dizziness, light headedness, and off balance." (ECF No. 20 ¶ 23.) The Amended Complaint repeats that "[f]atigue, drops in blood pressure, and discoordination are known side-effects of Seroquel" and that "the risk of these side effects is greatly increased when the medication is administered crushed." (ECF No. 20 ¶ 24.) Mr. Thornton "reported these adverse side effects to [] [Defendant] Nurse Brovold[6], who failed to take any remedial action and failed to consult an attending physician[.]" (ECF No. 20 ¶ 25.) "Instead of discontinuing crushing this medication, agents of Piedmont Regional Jail and Wellpath decided to instead just give Mr. Thornton his medication in the evening[.]" (ECF No. 20 ¶ 26.)

On November 12, 2022, "[a]t pill call", Mr. Thornton "became very loud and angry over his new crush order for his Seroquel." (ECF No. 20 ¶ 30.) "He walked out of line and said that he is not going to be able to take his medication crushed because it will hit his system too fast, and he will 'fall out on the floor.'" (ECF No. 20 ¶ 30.) Mr. Thornton "then proceeded to call his mom and [tell] her about his new crush order." (ECF No. 20 ¶ 30.) That same day, Mr. Thornton's mother called the facility and explained to Nurse Brovold that "'she just got off the phone with [Mr. Thornton's] doctor on the streets and the doctor said that his Seroquel is not to be taken crushed.'" (ECF No. 20 ¶¶ 28, 30.) "Despite this warning, Nurse Brovold and other agents of Wellpath continued crushing Mr. Thornton's Seroquel," which he received "between 8-9pm each night." (ECF No. 20 ¶¶ 29, 31.)

"On October 3, 2022, [Mr.] Thornton was cleared to participate in work duties at Piedmont Regional Jail." (ECF No. 20 ¶ 32.) Mr. Thornton signed the Wellpath Worker Clearance Form, which indicated that he had no "[r]estrictions to activity" and was not "tak[ing]

_____

6 Marie Brovold was a nurse employed by Wellpath. (ECF No. 20 ¶¶ 10, 29.)

4

medications that makes [him] drowsy or dizzy." (ECF No. 20-1, at 1.)  Immediately above Mr. Thornton's signature, the Wellpath Worker Clearance Form states: "[B]y signing, I acknowledge that I agree to the assigned work area and the rules listed above.  To the best of my knowledge, I have no physical or mental limitations preventing me from doing the jobs required and the information given above is true." (ECF No. 20-1, at 1.)

The Amended Complaint states that "[t]he Worker Clearance was issued in spite of [his] warning Wellpath and Piedmont Regional Jail about the serious physical side effects he was suffering as a result of having his medication crushed for several months." (ECF No. 20 ¶ 33.) "In spite of his dangerous symptoms, Mr. Thornton was assigned labor intensive and physically demanding work", including "operating heavy equipment to strip and buff the floors through Piedmont Regional Jail." (ECF No. 20 ¶ 34–35.)  He "was provided no training related to the safe usage of the floor scrubber or any techniques to clean the floor safely" and "was not issued any safety equipment to wear or otherwise utilize while buffing and scrubbing the floors with heavy machinery." (ECF No. 20 ¶ 38–39.)

"On December 10, 2022, [Mr.] Thornton was tasked with buffing the floors in a section of hallway within the jail utilizing an industrial grade electronic floor scrubber." (ECF No. 20 ¶ 36.)  He began this task "at approximately 10:00pm—approximately 1-2 hours after [he] was forced to take 800 milligrams of crushed Seroquel." (ECF No. 20 ¶ 37.)  "At 10:44pm on

December 9, 2023[7], [Mr. Thornton] was . . . clean[ing][8] a hallway in Piedmont Regional Jail and slipped on the slick floor." (ECF No. 20 ¶ 41.) "When [Mr.] Thornton slipped, he fell backwards and struck his head, knocking him immediately unconscious." (ECF No. 20 ¶ 42.) He "was transported from Piedmont Regional Jail to Centra Southside Community Hospital and then airlifted to VCU Health Medical Center in Richmond, Virginia and spent several weeks in a coma as a result of his head injury." (ECF No. ¶ 44.) Mr. Thornton "suffers from cognitive deficits, changes in the cadence of his speech, stuttering, and both short- and long-term memory deficits." (ECF No. 20 ¶ 45.)

### B.    **Procedural Background**

On July 9, 2024, Mr. Thornton filed the initial Complaint. (ECF No. 1.) On August 13, 2024, Mr. Thornton filed the Amended Complaint, alleging the following causes of action:

**Count I:**    42 U.S.C. § 1983 (against all Defendants)

**Count II:**    42 U.S.C. § 1983 – *Monell* Liability (against PRJA and Wellpath)

**Count III:**  Negligence (against all Defendants)

**Count IV:**  Negligence (against Defendants Wellpath and Lewis)

**Count V:**   Negligence (against PRJA)

---

[7] This date conflicts with paragraph 36 of the Amended Complaint, which describes this incident to have occurred "[o]n December 10, 2022." (ECF No. 20 ¶ 36.) Both of these dates conflict with page 18 of the Amended Complaint, which requests "interest from December 9, 2022." (ECF No. 20, at 18.) The video reflects that the incident occurred on December 9, 2022. (ECF No. 20-2.) The Court will treat conflicting allegations in the Amended Complaint about events occurring on December 10 as scrivener's error.

[8] Mr. Thornton's allegation that, at this time, he was "utilizing the floor scrubber to clean", (ECF No. 20 ¶ 41), conflicts with the video attached as Exhibit 2 to the Amended Complaint, which clearly shows Mr. Thornton using a mop when he slipped on the slick floor. (ECF No. 20-2, at 22:44:02–05.) As a result, the Court need not, and does not, accept as true Mr. Thornton's bare allegation that "[he] was utilizing the [industrial grade electronic] floor scrubber . . . and slipped on the slick floor." (ECF No. 20 ¶ 36, 41; *see also Fayetteville Invs*, 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.")).

(ECF No. 20, at 7–18.)  On August 27, 2024, PRJA filed its Motion to Dismiss.  (ECF No. 22.)

On September 6, 2024, Mr. Thornton timely responded, (ECF No. 28), and on September 12,

2024, PRJA replied, (ECF No. 30).

Defendants Wellpath, LLC, Marie E. Brovold, and Danielle Lewis (collectively

"Wellpath Defendants") filed a Motion to Dismiss Amended Complaint.  (ECF No. 25.)  After

that, Wellpath, LLC filed a Suggestion of Bankruptcy and Notice of Stay, notifying the Court of

its Chapter 11 Bankruptcy Petition filed with the United States Bankruptcy Court for the

Southern District of Texas.  (ECF No. 36, at 1.)  The same day, the Wellpath Defendants filed a

Motion for Stay, (ECF No. 37), noting that "[p]ursuant to Section 362 of the Bankruptcy Code,

this judicial proceeding is automatically stayed as to Wellpath, LLC."  (ECF No. 38, at 2.)  The

Wellpath Defendants further "request[ed] that the proceedings against Marie Brovold, RN and

Danielle Lewis, LPN be stayed until such time as the Bankruptcy Court may order otherwise."

(ECF No. 38, at 6.)  On February 4, 2025, this Court granted the Motion for Stay and stayed this

proceeding as to Wellpath, LLC; Marie E. Brovold; and Danielle Lewis.  (ECF No. 41.)  The

Court deemed as moot the Wellpath Defendants' Motion to Dismiss.  (ECF No. 41, at 4.)

For the reasons articulated below, the Court will grant PRJA's Motion to Dismiss.  (ECF

No. 22.)

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III.  Analysis

The Motion to Dismiss seeks dismissal of Mr. Thornton's Amended Complaint as to PRJA.  It seeks relief on the following grounds:  (1) Mr. Thornton fails to state a claim under 42

U.S.C. § 1983; (2) Mr. Thornton fails to state a claim for *Monell* liability under 42 U.S.C.

§ 1983; and (3) Mr. Thornton's negligence claims in Counts III and V are barred by the statute of

limitations. (ECF No. 23, at 8–29.)[9]

Because: (1) Mr. Thornton fails to state a claim against PRJA for a violation of 42

U.S.C. § 1983 in Count I, and (2) Mr. Thornton fails to state a claim for against PRJA for a

violation of 42 U.S.C. § 1983 under a *Monell* theory of liability in Count II, and (3) the Court

declines to exercise supplemental jurisdiction over the state law claims in Counts III and V, the

Court will grant PRJA's Motion to Dismiss. (ECF No. 22.)

### A.     Mr. Thorton Fails to Adequately Plead a § 1983 Claim in Count I as to PRJA

In Count I, Mr. Thornton alleges that all Defendants violated "his rights to humane

conditions of confinement, including appropriate medical care" afforded to him by the

Fourteenth Amendment of the United States Constitution as a pre-trial detainee. (ECF No. 20

¶ 47.) Specifically, Mr. Thornton alleges that PRJA "ha[d] a non-delegable duty to appropriately

manage healthcare providers and ensure safety and adequate care of the inmates" and that

"[e]ach Defendants' refusal to administer Mr. Thornton's Seroquel in a non-crushed form . . .

evinced a deliberate indifference towards [his] objectively serious medical needs." (ECF No. 20

¶¶ 49, 56.)

As explained above, on February 4, 2025, because of a related bankruptcy proceeding,

the Court stayed this proceeding as to Defendants Wellpath, LLC, Marie E. Brovold, and

Danielle Lewis. (ECF No. 41.) Thus, although Count I is alleged as against all Defendants, for

---

[9] Mr. Thornton brings five claims: Counts I and II are claims under 42 U.S.C. § 1983 and Counts III through V are negligence claims. Because Count IV is asserted only against Wellpath, LLC and Nurse Lewis, the Court need not consider it here. (*See* ECF No. 20, at 16.)

the purposes of ruling on the instant Motion to Dismiss, the Court will only analyze Count I as it

pertains to PRJA.

### 1.    Legal Standard:  § 1983 Claim for Deliberate Indifference to a Medical Need

Section 1983 prohibits constitutional violations by persons acting under the color of state

law.  *See* 42 U.S.C.  1983[10]; *Brown v. Middleton*, 362 F. App'x 340, 343 (4th Cir. 2010).

"Neither 'inanimate objects such as buildings, facilities, and grounds' nor collective terms such

as 'staff' or 'agency' are persons amenable to suit under § 1983."  *Hardee v. Walz*, No.

3:20cv729 (MHL), 2023 WL 5673952, at *5 (E.D. Va. Sept. 1, 2023) (quoting *Lamb v. Library

People Them*, No. 3:13-8, 2013 WL 526887, at *2 (D.S.C. Jan. 22, 2013) (explaining the

plaintiff's "use of the collection term 'people them' as a means to name a defendant in a § 1983

claim does not adequately name a 'person'").  However, "[f]or purposes of Section 1983, a

municipality is considered a 'person' and thus is subject to suit."  *Hunter v. Town of Mocksville*,

---

[10] 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

A pretrial detainee who claims inadequate medical care properly alleges his or her claim under the Fourteenth Amendment. *Douglass v. Sanok*, No. 3:05cv18, 2006 WL 2927780, at *10 (W.D. Va. Oct. 11, 2006); *see Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (stating that "[t]he Supreme Court has held that a pretrial detainee has a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment"). "To state a claim for deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence,' but the standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (quoting *Farmer v. Brennen*, 511 U.S. 825, 835 (1994)). A plaintiff must "show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (quoting *Farmer*, 511 U.S. at 836).

2.    **Mr. Thornton Fails to Allege a Violation of § 1983 in Count I Against PRJA Because He Fails to Plausibly Allege That PRJA Knew or Should Have Known of a Medical Condition Posing a Substantial Risk of Serious Harm**

As a threshold matter, PRJA is a "person" for § 1983 purposes. *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F.Supp.2d 558, 573–74 (E.D. Va. 2011) (vacated in part on other grounds) ("[T]he PRJA is a local government unit, and therefore[] can be sued directly under § 1983") (internal quotation marks and citation omitted) (brackets in original); *see also Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) (holding that a regional jail authority "is not an arm of the State for purposes of Eleventh Amendment immunity[11]").[12]    Therefore, PRJA is amenable to suit under § 1983.

Mr. Thornton's claim in Count I centers on "Defendants' refusal to administer Mr. Thornton's Seroquel in a non-crushed form", which he alleges "evinced a deliberate indifference towards [his] objectively serious medical needs." (ECF No. 20 ¶¶ 49, 56.) "Agents of Wellpath and Piedmont Regional Jail distributed Mr. Thornton's high dose of Seroquel in crushed form" and that "[a]gents of Wellpath and Piedmont Regional Jail put a 'crush and float' order in for Mr.

---

[11] "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). "Whether the PRJA is a 'person' under § 1983 depends on whether or not the PRJA is an arm of the State for purposes of Eleventh Amendment immunity. Although Eleventh Amendment immunity and 'personhood' under § 1983 are distinct issues, they are analytically tied: both turn on whether a governmental entity is so closely intertwined with the State as to be able to invoke the same protections as the State itself." *Newbrough*, 822 F.Supp.2d at 571.

[12] This Court is aware of the contrary determination in an earlier Fourth Circuit decision that "Piedmont Regional Jail is not a 'person' and is therefore not amenable to suit under § 1983." *Preval v. Reno*, No. 99-6950, 2000 WL 20591, at *1 (4th Cir. Jan. 13, 2000). Because *Kitchen* (a published decision) was decided two years after *Preval* (an unpublished decision) and deals with a regional jail authority as opposed to a regional jail, the Court treats *Kitchen* as controlling.

Thornton's Seroquel." (ECF No. 20 ¶¶ 17, 20.) However, he specifically identifies only one such agent: Nurse Brovold, whom Mr. Thornton states Wellpath employs. (ECF No. 20 ¶¶ 10, 25.) Mr. Thornton alleges that he "specifically reported [] adverse side effects" to Nurse Brovold, "who failed to take any remedial action and failed to consult an attending physician about the serious medical needs of Mr. Thornton." (ECF No. 20 ¶¶ 10, 25.) He further alleges that "his mom called the facility and explained to Nurse Brovold that 'she just got off the phone with [Mr. Thorton's] doctor on the streets and the doctor said that [Mr. Thornton's] Seroquel is not to be taken crushed.'" (ECF No. 20 ¶ 30.)

Mr. Thornton's Amended Complaint fails to plausibly allege that *PRJA* "knew or should have known" of "a substantial risk of serious harm" to Mr. Thornton posed by the crushing of his prescribed dose of Seroquel. Mr. Thornton's allegations directed against Nurse Brovold—whom he specifically alleges is an employee of Wellpath—do not plausibly allege a claim against PRJA. "'The doctrine of *respondeat superior* has no application under [§ 1983].'" *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). "[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Id.* Even taking as true Mr. Thornton's allegation that Nurse Brovold knew about Mr. Thornton's "adverse side effects" to taking his prescribed Seroquel in crushed form, Mr. Thornton fails to allege that *PRJA* knew or should have known of these adverse side effects.[13] Nor does the Amended Complaint contain a single allegation of any action or inaction by PRJA—referring only vaguely to "[a]gents of

---

[13] Further, although Mr. Thornton generally alleges that "it is inadvisable and a violation of the medical standard of care to crush certain medication," and "[c]rushing medication causes a sudden release of the active ingredient instead of a gradual absorption that results in overdose", he fails to specifically allege that Seroquel is among those medications. (ECF No. 20 ¶¶ 21–22.)

Wellpath and Piedmont Regional Jail." (ECF No. 20 ¶¶ 17, 20, 26, 30.) Thus, Mr. Thornton

fails state a claim against PRJA under § 1983 for deliberate indifference to a medical need.

### B. Mr. Thorton Fails to Adequately Plead a § 1983 Claim Pursuant to *Monell* in Count II as to PRJA

In Count II, Mr. Thornton alleges that Defendants PRJA and Wellpath violated § 1983

based on: (1) PRJA's "fail[ure] to train their agents on how to safely administer medication",

(2) Wellpath's "fail[ure] to train and supervise [its] employees responsible for administration and

maintenance of medications", and (3) both PRJA's and Wellpath's "widespread custom or policy

of failing to identify and address dangerous side effects of a medication." (ECF No. 20 ¶¶ 67,

76, 91–92.) Although Count II is alleged as against PRJA and Wellpath, for the purposes of

ruling on the instant Motion to Dismiss, the Court will only analyze Count II as it pertains to

PRJA.[14] First, the Court notes that Mr. Thornton signed the Wellpath Worker Clearance Form

indicating that he had no "[r]estrictions to activity" and was not "tak[ing] medications that makes

[him] drowsy or dizzy", (ECF No. 20-1), which undermines all claims to some degree. But even

ignoring his signature on the Wellpath Worker Clearance form, Mr. Thornton does not allege any

claim that survives this Motion to Dismiss.

### 1. Legal Standard: *Monell* Liability

"For purposes of Section 1983, a municipality is considered a 'person' and thus is subject

to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't

of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Although an underlying constitutional violation is a

*necessary* element of municipal liability, it is not *sufficient*: "a municipality cannot be held

liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held

---

[14] As explained above, on February 4, 2025, the Court stayed this proceeding as to
Defendants Wellpath, LLC; Marie E. Brovold; and Danielle Lewis. (ECF No. 41.)

liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S.

at 691). Instead, liability will arise only "when execution of a [municipality's] policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury that the [municipality] as an entity is responsible [for]

under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694). "[I]t is plain that municipal

liability may be imposed for a single decision by municipal policymakers under appropriate

circumstances." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

The United States Court of Appeals for the Fourth Circuit has identified four avenues

through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through
> the decisions of a person with final policymaking authority; (3) through an
> omission, such as a failure to properly train officers, that "manifest[s] deliberate
> indifference to the rights of citizens;" or (4) through a practice that is so "persistent
> and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v.

Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). The Amended Complaint attempts to establish

*Monell* liability against PRJA under the third and fourth avenues: deliberate indifference

through failure to adequately train agents, and improper custom.[15] (ECF No. 20, at 10–15.)

### a.    Deliberate Indifference Due to the Failure to Train

A municipality's failure to train may support § 1983 liability where the failure "amounts

to deliberate indifference," and is the "moving force [behind] the constitutional violation." *City*

---

[15] Mr. Thornton claims a § 1983 violation based on PRJA's and Wellpath's "widespread *custom* or *policy* of failing to identify and address dangerous side effects of a medication." (ECF No. 20 ¶¶ 67, 76, 91–92 (emphasis added).) While Mr. Thornton uses the word "policy," he does not allege the existence of an "express policy, such as a written ordinance or regulation." *See Lytle*, 326 F.3d at 471. As a result, the Court declines to analyze this claim under the first avenue of demonstrating municipal liability: express policy.

*of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989) (internal quotations omitted). This municipal liability theory thus has two components in addition to an underlying constitutional violation: deliberate indifference and causation.

To amount to "deliberate indifference," a failure to train must reflect the municipality's "deliberate" or "conscious" choice. *Id.* at 379. A "deliberate" choice requires that the municipality have "fair *notice* that subordinates are engaged in constitutional or statutory deprivations," and regardless "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004). Plaintiffs may establish deliberate indifference in two ways. First, they may show that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody*, 93 F. Supp. 3d at 538 (quoting *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F.Supp.3d 721, 726 (E.D. Va. 2014)). Second, they may demonstrate that the municipality has failed to train its employees on "an obvious constitutional duty that particular employees are certain to face." *Id.* at 538 (quoting *Gallimore*, 38 F. Supp. 3d 726). This second method is limited, however, to a "narrow scope" of constitutional duties. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011).

A plaintiff must also demonstrate a "causal nexus" between the deficient training and the alleged constitutional violation. *Brown*, 308 F. Supp. 2d at 694. Generally, a plaintiff cannot demonstrate a causal connection "by proof of a single incident of unconstitutional activity alone." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). Rather, a plaintiff must show that the "deficiency in training actually caused" the violation. *Canton*, 489 U.S. 378, 391. However, in limited cases, a single incident can constitute support for a causal connection where the constitutional duty is so obvious that without proper training, "the specific violation [was]

16

'almost bound to happen, sooner or later.'" *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

### b.    Deliberate Indifference Under a Custom or Practice

Plaintiffs may also sue municipalities for constitutional deprivations "pursuant to governmental 'custom,' even though such a custom has not received formal approval through the body's official decision[-]making channels." *Monell*, 436 U.S. at 690.  To determine whether a practice is persistent enough to constitute a custom with the force of law, a plaintiff must demonstrate that the "duration and frequency" of the practice "indicate[s] that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Baltimore City State Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (internal citations omitted).  Finally, the plaintiff must identify "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385.

### 2.    Mr. Thornton Insufficiently Alleges a Failure to Train

The Amended Complaint fails to set forth sufficient facts to establish *Monell* liability pursuant to a failure to train theory.  Viewed favorably, Mr. Thornton alleges that that PRJA "failed to train their agents to recognize the signs of serious symptoms and side effects of psychotropic medications like Seroquel" and "failed to train their agents on how to safely administer medication and when it is safe and reasonable to enter a crush and float order for an inmate or detainee's medication." (ECF No. 20 ¶¶ 65, 67.)  Mr. Thornton adds that PRJA "failed to monitor healthcare provider Wellpath to ensure that they were providing adequate medical care and not creating unnecessary risk to inmates." (ECF No. 20 ¶ 66.)  Mr. Thornton contends that PRJA "acted with deliberate indifference when it failed to train and supervise their agents"

17

in these ways.  (ECF No. 20 ¶ 71.)  "As a direct and proximate result of Piedmont Regional Jail [Authority's] failures to train and supervise as set forth above, Mr. Thornton suffered constitutional injury."  (ECF No. 20 ¶ 74.)  However, he offers no specific factual allegations regarding training at PRJA.

Mr. Thornton's allegations regarding PRJA's failure to train constitute the same type of legal conclusions and formulaic recitation of the elements of a claim that other courts within this district have already held cannot survive a motion to dismiss.  For instance, in *Lee v. City of Richmond* (a case involving troubling facts), the plaintiff attempted to establish *Monell* liability on behalf of Richmond by, among other things, arguing that the City inadequately trained its officers.  No 3:12cv471 (REP), 2013 WL 1155590, at *1 (E.D. Va. Mar. 19, 2013).  Lee averred that: "(1) the training was inadequate . . . ; (2) the inadequate training constitute[d] deliberate indifference . . . ; and (3) the risk of constitutional injury as a result of such deliberate indifference . . . is very obvious." *Id.* at *7 (internal quotation marks omitted) (second and fourth alterations in original).  The court concluded that these scant allegations were inadequate to impose liability upon the City, as they were "the exact type of 'labels and conclusions and a formulaic recitation of the elements of a cause of action' that *Twombly* says 'will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Tombly*, 550 U.S. 544, 555 (2007)).  Indeed, the court more precisely concluded that Lee had "not alleged any, much less sufficient, facts to render 'plausible' a claim . . . that the 'violation of a federal right [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (second alteration in original) (quoting *Hill v. Robeson Cnty.*, 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010)); *accord Brown v. Cobb*, No. 3:17cv627 (JAG), 2018 WL 3080064, at

*3 (E.D. Va. June 21, 2018) (discussing plaintiffs' "vague and conclusory allegations about the City's failure to train").

Mr. Thornton's allegations as to PRJA's failure to train its "agents" regarding the administration of medication are similarly—and fatally—conclusory. As the *Lee* Court articulated, to allow a plaintiff to establish municipal liability by merely reciting the theory's elements would be to "functionally expose the City to *respondeat superior* liability, which has been explicitly foreclosed by *Monell*." *Lee*, 2013 WL 1155590, at *7. Mr. Thornton's allegations amount to a recitation of the elements of the claim. Accordingly, his failure to train theory must fail.

### 3. Mr. Thornton Insufficiently Alleges an Improper Policy or Custom

Likewise, the Amended Complaint fails to adequately allege that PRJA embraced a policy or custom of the constitutional violations asserted here. Mr. Thornton claims that PRJA had or condoned a "policy"[16] and "custom" of:

> (1) "Crushing medication for inmates and pre-trial detainees who are suspected of 'cheeking' their medication to aid in their administration of medi[c]ation without regard to whether it was safe for a patient to consume the medication crushed", (ECF No. 20 ¶ 96–97; *see also* ECF No. 20 ¶¶ 88, 90 (containing similar allegations));

> (2) "[F]ailing to identify and address dangerous side effects of medication" (ECF No. 20 ¶ 91);

> (3) "[N]ot placing an inmate or detainee who is receiving crushed medication with dangerous side effects on a higher level of monitoring", (ECF No. 20 ¶ 94);

> (4) "[D]elegat[ing] the worker clearance screening to a[n] LPN who was not qualified to ensure Mr. Thornton could safely perform the job assigned"; (ECF No. 20 ¶ 86).

---

[16] As discussed, Mr. Thornton identifies no express PRJA policy "embodied in written ordinances or regulations," *Moody*, 93 F. Supp. 3d at 531, that violated his constitutional rights. Thus, his assertion that a "policy" violated his rights, (ECF No. 20 ¶¶ 83, 86, 88–91, 94–97, 99), without identifying any specific policy constitutes a "mere conclusory statement[]" that is "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

19

His suggestion that PRJA had a "custom" that violated his constitutional rights, (ECF No. 20 ¶¶ 91–92, 94–95, 97, 99);

rests on labels and conclusions. In *Owens*, the defendant alleged that the Baltimore City Police Department ("BCPD") violated his constitutional rights by intentionally withholding exculpatory evidence resulting in his wrongful conviction, for which he served over twenty years in prison. *Owens*, 767 F.3d at 385, 387. Owens alleged that this withholding resulted from a "'custom, policy, and/or practice' of [BCPD] condoning its officers' conduct in 'knowingly, consciously, and repeatedly with[holding] and suppress[ing]' exculpatory evidence." *Id.* at 402 (second and third alterations in original). Crucially, the Fourth Circuit found that Owens' allegation that BCPD had "reported and unreported cases. . . of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions" was sufficient to render his *Monell* claim "plausible on its face." *Id.* at 403 (internal quotations omitted). The Court noted that these specific allegations were integral to the Plaintiff's success. *Id.* ("Owens has done more than [allege mere conclusions]: Owens has alleged facts . . . which, if true, would buttress his legal conclusion.").

*Moody v. City of Newport News* similarly illustrates how plaintiffs asserting an "unconstitutional custom" theory under *Monell* must at least allege *some* facts supporting the existence of the custom beyond mere "labels and conclusions." 93 F. Supp. 3d 516, 542 (E.D. Va. 2015). There, Moody brought a § 1983 claim based on officers' alleged use of excessive force when repeatedly shooting into Moody's car, claiming that the City "maintained customs . . . amounting to deliberate indifference to the constitutional rights of Plaintiff and the public." *Id.* at 543 (internal quotations omitted). While the court found this assertion conclusory by itself, it ultimately concluded that Moody's allegation regarding a specific 2007 shooting that resulted in death, in combination with more general allegations of routine failure to investigate

20

excessive force claims, were sufficient to facially demonstrate a custom of "failing to adequately investigate excessive force claims." *Id.* at 543 (internal quotations omitted).

Here, however, Mr. Thornton's Amended Complaint is bereft of facts to plausibly allege an improper custom. While Mr. Thornton alleges that PJRA "implement[ed] a policy that required healthcare professionals to crush medication solely on the basis of a remote risk of cheeking" medication, (ECF No. 20 ¶ 88), Mr. Thornton concedes that the "crush and float" order as to his medication was implemented based on his "*history* of cheeking medication." (ECF No. 20 ¶ 20 (emphasis added).) A reasonable inference therefrom is that PRJA's *standard* policy is to issue medication like Mr. Thornton's *in pill form.* Further, Mr. Thornton does not state that PRJA had received other complaints relating to administering medication in a crushed form, *cf. Owens*, 767 F.3d at 403, nor does he allege an instance of similar unconstitutional conduct outside of his experience, *cf. Moody*, 93 F. Supp. 3d at 543. Even presming that the second distribution of crushed medication to him occurred after his mother told Nurse Brovold of the potential danger, this allegation does not rise to the level of establishing an unconstiutianl policy or custom.

Nor does the Amended Complaint's reference to a 2012 Findings Letter "identifying deficiencies related to medical and mental healthcare to prisoners at Piedmont" suffice. (*See* ECF No. 20 ¶ 59.) First, the Amended Complaint makes plain that any "agreement and monitoring by the Department of Justice" was issued thirteen years ago and was terminated in 2018—six years before the filing of this action—fails to allege a "practice [] persistent enough to constitute a custom with the force of law" that PRJA "failed to correct [] due to [] deliberate indifference." (ECF No. 20 ¶ 63; *Owens*, 767 F.3d at 402.) Second, the Amended Complaint does not allege that 2012 letter or agreement pertained to the crushing of medication, which is at

21

the center of Mr. Thornton's allegations here. Even read favorably and presuming his allegations are true, these allegations do not support a reasonable inference that PRJA embraced or condoned a policy that violated Mr. Thornton's constitutional rights. Accordingly, Mr. Thornton's custom theory must fail.

### C.    The Court Will Decline to Exercise Supplemental Jurisdiction Over Mr. Thornton's Remaining State Law Claims Against PRJA in Counts III and V

The two remaining counts—Counts III and V—allege state law negligence claims over which the Court does not have original jurisdiction.[17] The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Court may consider the remaining state law claims only if it exercises supplemental jurisdiction. Because all relevant factors weigh against exercising supplemental jurisdiction, the Court will decline to do so here. *See, e.g.*, *Ruttenberg v. Jones*, 603 F. Supp. 2d 844, 873 (E.D. Va. 2009), *aff'd*, 375 F. App'x 298 (4th Cir. 2010) (declining to exercise supplemental jurisdiction over state law claims after dismissing all federal claims in § 1983 action).

---

[17] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction over a claim that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3).

### 1.    Legal Standard:  Supplemental Jurisdiction After Federal Claims Are Dismissed

Federal district courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as a federal claim.  28 U.S.C. § 1367(a).  A district court, however, may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well).

"The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106,109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away.").  Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

### 2.    The Court Will Decline to Exercise Supplemental Jurisdiction

Although the Court has unbridled discretion in deciding whether to exercise supplemental jurisdiction in this case, *Carlsbad Tech., Inc.*, 556 U.S. at 639, the Fourth Circuit advises that the Court *should* consider "convenience and fairness to the parties, the existence of any underlying

issues of federal policy, comity, and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110. An evaluation of these four factors uniformly favors dismissal.

As to the federal policy factor, none of the remaining counts directly involve federal policy. All remaining counts allege causes of action under Virginia law.

The Court's consideration of comity and judicial economy likewise favors dismissal. Mr. Thorton's remaining claims rely entirely upon Virginia law. Allowing a state court to address state law matters would best serve judicial economy.

Fairness and convenience to the parties also weigh in favor of the Court declining supplemental jurisdiction. This case remains in an early stage of litigation. The Court has not decided any disputed state-law-based claims. The Court has not entered any discovery orders, and no matters will remain under consideration after this Court issues its decision. Were Mr. Thornton to subsequently file his claims in a court of appropriate jurisdiction, the parties would, for all intents and purposes, begin at the same stage of the litigation process. Accordingly, the Court's consideration of the convenience to the parties also favors dismissal.

Thus, the Court will dismiss Counts III and V as to PRJA.

### IV. Conclusion

For the reasons articulated above, the Court will grant the Motion to Dismiss. (ECF No. 22.) The Court will dismiss Defendant Piedmont Regional Jail Authority from this action.

An appropriate Order shall issue.

Date: 3/21/25
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge