**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**CHARLES THORNTON,**

    **Plaintiff,**

    **v.**                        **Civil Action No. 3:24cv499**

**MARIE E BROVOLD,**

    **and**

**DANIELLE LEWIS,**

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Marie Brovold and Danielle Lewis' (collectively, "Defendants") Motion to Dismiss (the "Motion" or "Motion to Dismiss"). (ECF No. 54.)[1] Plaintiff Charles Thornton responded in opposition to the Motion, (ECF No. 57), and Defendants replied, (ECF No. 58).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will grant the Motion to Dismiss as to the federal claims and decline to exercise supplemental jurisdiction as to the pendent state law claims. (ECF No. 54.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

**A.      Factual Background[2]**

**1.      Mr. Thornton Is Incarcerated as a Pretrial Detainee at Piedmont Regional Jail, Where He Received His Medication in Crushed Form**

Mr. Thornton was incarcerated as a pretrial detainee at Piedmont Regional Jail ("Piedmont") from July 26, 2022 to December 10, 2022. (ECF No. 20 ¶ 13.) Marie Brovold and Danielle Lewis ("Nurse Brovold" and "Nurse Lewis," respectively) were employed by Wellpath, LLC ("Wellpath")[3] as nurses at Piedmont. (*See* ECF No. 20 ¶¶ 10–11.)

Before his incarceration, Mr. Thornton "suffered from a mood disorder, for which he was prescribed the maximum dose 800mgs of Seroquel to be taken daily." (ECF No. 20 ¶ 14.) Mr. Thornton took Seroquel for several years prior to his admission at Piedmont in "pill form." (ECF No. 20 ¶ 15.)

While incarcerated at Piedmont, Mr. Thornton received his Seroquel "on a daily basis at the pharmacy counter run by Wellpath." (ECF No. 20 ¶ 16.) Due to Mr. Thornton's "remote

---

[2] In considering the Motion, (ECF No. 54), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Mr. Thornton. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Mr. Thornton attached two exhibits to the Amended Complaint. (ECF Nos. 20-1, 20-2.) The second exhibit is a video exhibit provided to the Court. (*See* ECF No. 20-2.) At the motion to dismiss stage, a court may consider a video that is attached to the complaint to the extent that the video does not "'blatantly contradict[] the plaintiff['s] allegations.'" *Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026) (quoting *Doriety v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024)). To the extent the video exhibit contradicts any bare allegation of the Amended Complaint, the former will prevail. *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.").

[3] Wellpath contracted with Piedmont "to provide medical care to inmates and pre-trial detainees." (ECF No. 20 ¶ 7.)

history of cheeking medication," "[a]gents of Wellpath and [Piedmont] put a 'crush and float' order in for Mr. Thornton's Seroquel."[4] (ECF No. 20 ¶¶ 17, 20.) The "crush and float order" meant that Mr. Thornton received his "high dose of Seroquel in crushed form" rather than "in pill form like he had outside of Piedmont."[5] (ECF No. 20 ¶ 17.)

According to Mr. Thornton, "it is inadvisable and a violation of the medical standard of care to crush certain medication." (ECF No. 20 ¶ 21.) Mr. Thornton alleges that Seroquel's "known side-effects," including "[f]atigue, drops in blood pressure, and discoordination" are "greatly increased when the medication is administered crushed." (ECF No. 20 ¶ 24.)

### 2.    In October 2022, Mr. Thornton is Cleared to Participate in Work Duties at Piedmont

"On October 3, 2022, [Mr.] Thornton was cleared to participate in work duties at Piedmont." (ECF No. 20 ¶ 32.) Mr. Thornton signed a Wellpath Worker Clearance Form ("Clearance Form"), which indicated that he had no "[r]estrictions to activity" and was not "tak[ing] medications that ma[de] [him] drowsy or dizzy." (ECF No. 20-1, at 1.) Immediately above Mr. Thornton's signature, the Clearance Form states: "[B]y signing, I acknowledge that I agree to the assigned work area and the rules listed above. To the best of my knowledge, I have no physical or mental limitations preventing me from doing the jobs required and the information

---

[4] Mr. Thornton alleges that Piedmont and Wellpath had a "blanket policy and custom to crush any medication if there is any suspicion of history of a [p]laintiff diverting the medication." (ECF No. 20 ¶ 19.)

[5] The Amended Complaint does not allege when the crush and float order was implemented. Although paragraph 33 of the Amended Complaint alleges that Mr. Thornton had been taking crushed Seroquel for "months" prior to October 3, 2022, a medical note from November 12, 2022 states that the "crush order" was "new." (*Compare* ECF No. 20 ¶ 33 *with* ¶ 30.) The date on which the crush and float order was implemented is not material to this Court's decision.

given above is true." (ECF No. 20-1, at 1.) Nurse Lewis' name and signature appear on the Clearance Form to the right of Mr. Thornton's signature. (ECF No. 20-1, at 1.)

Mr. Thornton alleges that "[t]he [Clearance Form] was issued in spite of [his] warning Wellpath and [Piedmont] about the serious physical side effects he was suffering as a result of having his medication crushed for several months." (ECF No. 20 ¶ 33.) Mr. Thornton further alleges that, "[i]n spite of his dangerous symptoms, [he] was assigned labor intensive and physically demanding work," including "operating heavy equipment to strip and buff the floors through Piedmont." (ECF No. 20 ¶¶ 34–35.)

### 3.    Mr. Thornton Complains About His Symptoms from Taking Seroquel in Crushed Form

After taking his prescribed Seroquel in crushed form, "Mr. Thornton immediately began complaining to agents of Wellpath and [Piedmont] that taking the medication in crushed form made him feel fatigue, dizziness, light headedness, and off balance." (ECF No. 20 ¶ 23.) Specifically, Mr. Thornton alleges that he "reported these adverse side effects to [Nurse] Brovold, who failed to take any remedial action and failed to consult an attending physician." (ECF No. 20 ¶ 25.) "Instead of discontinuing crushing [his] medication, agents of [Piedmont] and Wellpath decided to instead just give Mr. Thornton his medication in the evening." (ECF No. 20 ¶ 26.)

On November 12, 2022, Mr. Thornton's mother called Piedmont and "explained to Nurse Brovold that Mr. Thornton's prescribing physician advised that his Seroquel should not be taken crushed." (ECF No. 20 ¶¶ 28, 30.) "Despite this warning, Nurse Brovold and other agents of Wellpath continued crushing Mr. Thornton's Seroquel," which he received "between 8–9pm each night." (ECF No. 20 ¶¶ 29, 31.)

4

Also on November 12, 2022, a medical staff member entered a note in Mr. Thornton's medical chart that, "[a]t pill call," Mr. Thornton "became very loud and angry over his new crush order for his Seroquel." (ECF No. 20 ¶ 30.) "He walked out of line and said that he is not going to be able to take his medication crushed because it will hit his system too fast, and he will 'fall out on the floor.'" (ECF No. 20 ¶ 30.)

### 4.    **Mr. Thornton Falls While on Work Duty at Piedmont**

On December 9, 2022,[6] "[Mr.] Thornton was tasked with buffing the floors in a section of hallway within the jail." (ECF No. 20 ¶ 36.)[7] He began this task "at approximately 10:00pm— approximately 1–2 hours after [he] was forced to take 800 milligrams of crushed Seroquel." (ECF No. 20 ¶ 37.)

---

[6] The Amended Complaint states that the incident occurred on two different dates: paragraph 36 alleges that it occurred on "December *10, 2022*," while paragraph 41 indicates that it occurred on "December *9, 2023*." (ECF No. 20 ¶¶ 36, 41 (emphases added).)  Both of these dates conflict with page 18 of the Amended Complaint, which requests "interest from December *9, 2022*." (ECF No. 20, at 18 (emphasis added).)  Consistent with page 18, the video footage provided by Mr. Thornton reflects that the incident occurred on December *9, 2022*. (ECF No. 20-2.)

Although the exact date on which the incident occurred is not material to this Court's consideration of the Motion to Dismiss, the Court will assume for the purpose of this Memorandum Opinion that the incident occurred on December 9, 2022, and will treat the allegations in the Amended Complaint about events occurring on December 10, or in 2023, as scrivener's errors.

[7] Mr. Thornton alleges he was "utilizing the floor scrubber to clean." (ECF No. 20 ¶¶ 36, 41.)  That allegation conflicts with the video footage attached to the Amended Complaint, which clearly shows Mr. Thornton using a mop when he slipped on the slick floor. (ECF No. 20-2, at 22:44:02–05.)  As a result, the Court does not accept as true Mr. Thornton's bare allegation that "[he] was utilizing the [industrial grade electronic] floor scrubber . . . and slipped on the slick floor." (ECF No. 20 ¶¶ 36, 41; *see also Fayetteville Invs.*, 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.").)

"At 10:44pm on December 9, [2022], [Mr. Thornton] was . . . clean[ing] a hallway in [Piedmont] and slipped on the slick floor." (ECF No. 20 ¶ 41.) "When [Mr.] Thornton slipped, he fell backwards and struck his head, knocking him immediately unconscious." (ECF No. 20 ¶ 42.) He "was transported from [Piedmont] to Central Southside Community Hospital and then airlifted to VCU Health Medical Center in Richmond, Virginia and spent several weeks in a coma as a result of his head injury." (ECF No. 20 ¶ 44.) Mr. Thornton now "suffers from cognitive deficits, changes in the cadence of his speech, stuttering, and both short- and long-term memory deficits." (ECF No. 20 ¶ 45.)

## B.      Procedural Background

On July 9, 2024, Mr. Thornton filed the initial complaint against Defendants Piedmont Regional Jail Authority ("PRJA"), Wellpath, and Nurses Brovold and Lewis. (ECF No. 1.) On August 13, 2024, Mr. Thornton filed the Amended Complaint, alleging the following five counts:

| | |
|---|---|
| **Count I:** | 42 U.S.C. § 1983 (against all Defendants) |
| **Count II:** | 42 U.S.C. § 1983 – *Monell* Liability (against PRJA and Wellpath) |
| **Count III:** | Negligence (against all Defendants) |
| **Count IV:** | Negligence (against Defendants Wellpath and Lewis) |
| **Count V:** | Negligence (against PRJA) |

(ECF No. 20 ¶¶ 46–125.)

On August 27, 2024, PRJA filed a Motion to Dismiss for failure to state a claim. (ECF No. 22.) On March 21, 2025, the Court granted PRJA's Motion to Dismiss and dismissed PRJA from the case. (ECF Nos. 43, 44.)

On November 19, 2024, Wellpath filed a Suggestion of Bankruptcy and Notice of Stay, notifying the Court of its Chapter 11 Bankruptcy Petition filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). (ECF No. 36.) The same

6

day, Wellpath and Nurses Brovold and Lewis filed a Motion for Stay.  (ECF Nos. 37, 38.)  On

February 4, 2025, the Court granted the Motion to Stay and stayed the case as to Wellpath, Nurse

Brovold, and Nurse Lewis.  (ECF No. 41.)

On May 20, 2025, Wellpath filed a Notice of Bankruptcy Confirmation and Discharge

and its own Motion to Dismiss, requesting that this Court dismiss Wellpath from this action in

accordance with the Bankruptcy Court's Orders confirming Wellpath's Plan of Reorganization.

(ECF No. 46.)  On June 9, 2025, the Court granted Wellpath's Motion to Dismiss and dismissed

Wellpath from the case.  (ECF No. 47.)  Following the Court's dismissal of PRJA and Wellpath,

three Counts remain:

| | |
|---|---|
| **Count I:** | 42 U.S.C. § 1983 (against Nurses Brovold and Lewis) |
| **Count III:** | Negligence (against Nurses Brovold and Lewis) |
| **Count IV:** | Negligence (against Nurse Lewis) |

(ECF No. 20 ¶¶ 46–57, 106–118.)

On August 11, 2025, the Court directed Nurses Brovold and Lewis to file positions "as to

the propriety of granting a stay with respect to the claims against them."  (ECF No. 48, at 1–2.)

On August 27, 2025, Nurses Lewis and Brovold requested that the Court lift the stay, (ECF No.

49), which the Court did on September 11, 2025, (ECF No. 53).

On October 2, 2025, Nurses Brovold and Lewis filed the instant Motion to Dismiss.

(ECF No. 54.)  Mr. Thornton's response to the Motion to Dismiss was due by October 16, 2025.

On November 3, 2025, the Court issued a Show Cause Order (the "Show Cause Order"),

ordering Mr. Thornton to show cause "as to why he ha[d] not filed a response to the Motion to

Dismiss" and directing him to do so within two weeks.  (ECF No. 56, at 1.)

On November 17, 2025, within the two-week period set in the Court's Show Cause

Order, but over a month after the response deadline, Mr. Thornton filed a response to the Motion

to Dismiss. (ECF No. 57.) On November 24, 2025, Defendants replied in support of their Motion to Dismiss. (ECF No. 58.)[8]

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

---

[8] In their reply, Defendants move to strike Mr. Thornton's untimely response on the grounds that the filing delay does not amount to excusable neglect. (ECF No. 58, at 1–3.) Mr. Thornton filed a response in opposition to the request to strike, (ECF No. 59), and Defendants replied, (ECF No. 60).

Eastern District of Virginia Local Civil Rule 7(F)(1) requires that, with limited exceptions that do not apply here, "[a]ll motions . . . *shall be accompanied by a written brief* setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." E.D. Va. Local Civ. R. 7(F)(1) (emphasis added). Defendants' request to strike Mr. Thornton's response was embedded in their reply in support of the Motion to Dismiss and was not accompanied by a separate written brief. Because it fails to comply with this Court's Local Rules, the Court declines to entertain Defendants' request to strike Mr. Thornton's response.

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

### III. Analysis

Nurses Brovold and Lewis move to dismiss each remaining count in Mr. Thornton's Amended Complaint on the following grounds: (1) Mr. Thornton fails to state a claim in Count I for deliberate indifference to a serious medical need under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; (2) Mr. Thornton's negligence claims in Counts III and IV are barred by the statute of limitations; and, (3) Mr. Thornton fails to state a claim for negligence in Counts III and IV. (ECF No. 55, at 5–13.)

For the reasons articulated below, the Court finds that Mr. Thornton has failed to state a claim against Nurses Brovold and Lewis for violation of his Fourteenth Amendment rights under § 1983 in Count I and will dismiss Count I as to both Defendants. The Court will decline to exercise supplemental jurisdiction over the remaining state law claims in Counts III and IV.

**A.    <u>Count I</u>:  Mr. Thornton Fails to Adequately Plead a § 1983 Claim Against <u>Nurses Brovold and Lewis</u>**

In Count I, Mr. Thornton alleges that Nurses Brovold and Lewis violated "his rights to humane conditions of confinement, including appropriate medical care" afforded to him by the Fourteenth Amendment as a pretrial detainee.  (ECF No. 20 ¶ 47.)  Specifically, Mr. Thornton alleges that he suffered "serious and life threatening side effects" from taking his Seroquel in a crushed form about which Nurses Brovold and Lewis knew or should have known, but that they failed to respond appropriately to his medical needs, including by failing to notify a doctor about his symptoms.  (*See* ECF No. 20 ¶¶ 51–57.)

In the Motion to Dismiss, Nurses Brovold and Lewis assert that Mr. Thornton's side effects do not constitute a serious medical need for purposes of § 1983, and that even if they did, Nurses Brovold and Lewis did not respond to those symptoms with deliberate indifference. (ECF No. 55, at 6–10.)

The Court explains below that Mr. Thornton has failed to plausibly allege that he suffered a medical condition that posed a substantial risk of serious harm about which Nurses Brovold and Lewis knew or should have known, that they intentionally, knowingly, or recklessly acted or failed to act appropriately to address that condition, or that their failure to respond appropriately resulted in Mr. Thornton's harm.

### 1.    Legal Standard:  42 U.S.C. § 1983 Claim for Deliberate Indifference to a Medical Need Under the Fourteenth Amendment

A pretrial detainee who claims inadequate medical care properly alleges his or her claim under the Fourteenth Amendment. *Douglass v. Sanok*, No. 3:05-cv-18, 2006 WL 2927780, at *10 (W.D. Va. Oct. 11, 2006); *see also Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Supreme Court has held that a pretrial detainee has a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment."). To state a claim for deliberate indifference to a medical need, a pretrial detainee must plead:

(1) they had a medical condition or injury that posed a substantial risk of serious harm;

(2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed;

(3) the defendant knew or should have known

(a) that the detainee had the condition and

(b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and

(4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023); *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) ("[A]n officer is 'deliberately indifferent' when he [or she] intentionally, knowingly, or recklessly acts or fails to act when he [or she] knew or should have known about both the detainee's condition and the unjustifiably high risk of harm resulting from his [or her] action or inaction.") (citations omitted).

"To allege that an officer acted with deliberate indifference, the complaint must make defendant-specific allegations." *Rice*, 172 F.4th at 432.  Thus, "[a] plaintiff who makes only 'collective allegations against Defendants'—without specifying how each individual defendant

11

interacted with [him or] her or bore responsibility for the alleged constitutional deprivation—has not stated a plausible claim against any defendant." *Id.* (quoting *Langford v. Joyner*, 62 F.4th 122, 125–26 (4th Cir. 2023)).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence,' but the standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A plaintiff must "show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (quoting *Farmer*, 511 U.S. at 836).

### 2. *Short* Element 1:  Mr. Thornton Fails to Allege that He Suffered from a Serious Medical Condition or Injury

To state a claim for deliberate indifference under the Fourteenth Amendment, a pretrial detainee must establish that he or she suffered from a "medical condition or injury that posed a substantial risk of serious harm." *Short*, 87 F.4th at 611. A "serious medical condition" is a "medical need that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2022) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Here, Mr. Thornton alleges that "proper medication administration, treatment for mood disorders, and the side effects [he reported] . . . after taking Seroquel in crushed form all

12

constitute objectively serious medical needs." (ECF No. 20 ¶ 50.) None of these conditions constitute an objectively serious medical need.

First, neither "proper medication administration" nor "treatment for mood disorders" are medical conditions. Both may be necessary to *treat* a serious medical need, *Scinto*, 841 F.3d at 225 (defining a "serious medical condition" as a "medical need . . . mandating treatment"), but the Court is not aware of any authority, nor has Mr. Thornton identified any, suggesting that the need for medication or treatment itself—rather than the underlying condition—constitutes a serious medical need.

The side effects Mr. Thornton suffered after taking Seroquel in crushed form likewise fail to amount to a serious medical need. Mr. Thornton alleges that taking Seroquel crushed "made him feel fatigue, dizziness, light headedness, and off balance."[9] (ECF No. 20 ¶ 23.) But courts have routinely found that dizziness, fatigue and lightheadedness, even when experienced as the side-effect of medication, do not amount to a serious medical need. *See Archer v. Amonette*, No. 7:07-cv-88, 2007 WL 1094408, at *1, *3 (W.D. Va. Apr. 9, 2007) (holding that dizziness and headaches experienced as side effects of a blood pressure medication did not constitute a serious medical condition); *Morrison v. Vandermosten*, No. 4:19-cv-1926, 2021 WL 4055160, at *4–5 (D.S.C. Mar. 19, 2021) (finding that the "numb hands" and "mind speed" plaintiff experienced

---

[9] In addition, the Court observed in granting Piedmont's motion to dismiss, that

> although Mr. Thornton generally alleges that "it is inadvisable and a violation of the medical standard of care to crush certain medication," and "[c]rushing medication causes a sudden release of the active ingredient instead of a gradual absorption that results in overdose" he fails to specifically allege that Seroquel is among those medications.

(ECF No. 43, at 13 n.13 (quoting ECF No. 20 ¶¶ 21–22).) This pleading failure further undercuts Mr. Thornton's argument that taking Seroquel in crushed form constitutes a serious medical condition for purposes of § 1983 liability.

13

from an increased dose of Seroquel were not "sufficiently serious or significant injuries to give rise to a constitutional cause of action); *see also Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (holding that breathing problems, chest pains, sinus problems, headaches, dizziness, and a loss of energy were "objectively speaking, relatively minor").[10]  Thus, because Mr. Thornton's side effects as a result of taking crushed Seroquel were neither "diagnosed by a physician as mandating treatment" nor were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," they do not rise to the level of a serious medical condition sufficient to state a claim for deliberate indifference.

Because Mr. Thornton has failed to allege that he suffered from a serious medical condition, his deliberate indifference claim against Nurses Brovold and Lewis necessarily fails. *See Short*, 87 F.4th at 611.  Nevertheless, in the interest of creating a full record, the Court considers the remaining *Short* elements below.

---

[10] In his response in opposition to the Motion to Dismiss, Mr. Thornton also posits that "the occurrence of a serious injury is alone sufficient to satisfy" *Short*'s serious medical need element, and that he has satisfied that element through the "lifelong handicap, permanent loss, or considerable pain" he suffered as a result of his fall. (ECF No. 57, at 4; *see also* ECF No. 20 ¶ 45 (alleging that Mr. Thornton suffered cognitive deficits, changes in the cadence of his speech, stuttering, and both short- and long-term memory deficits as a result of the fall).)

Mr. Thornton relies on two cases for the proposition that the injuries he suffered as a result of the fall are themselves serious medical needs. (ECF No. 57, at 4 (citing *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) *and Strickland v. Halsey*, 638 F. App'x 179, 184 (4th Cir. 2015) (per curiam)).  But both *Makdessi* and *Strickland* involved claims by plaintiffs who alleged that prison officials failed to take reasonable steps to protect them from harm.  Neither involved a deliberate indifference to medical need claim like the one at bar.  And neither stands for the proposition that injuries a plaintiff suffers as a result of alleged medical deliberate indifference can amount to a serious medical need.  Mr. Thornton cites no authority, nor is the Court aware of any, holding that the injury a plaintiff suffers *as a result of* alleged deliberate indifference to a serious medical need can itself amount to a serious medical need absent allegations that a defendant subsequently responded to *that* injury with deliberate indifference.

The Court therefore does not consider the injuries Mr. Thornton suffered as a consequence of his fall as a serious medical need.

3.    **_Short_ Elements 2 and 3:  Mr. Thornton Fails to Allege Defendants Knew or Should Have Known about Mr. Thornton's Medical Condition and Acted Intentionally, Knowingly, or Recklessly or Failed to Respond in a Manner that Posed an Unjustifiably High Risk of Harm**

_Short_ elements two and three require Mr. Thornton to establish that Nurses Brovold and Lewis intentionally, knowingly, or recklessly acted or failed to act when they knew or should have known about Mr. Thornton's medical condition _and_ the unjustifiably high risk of harm resulting from their action or inaction. _Short_, 87 F.4th at 611; _Rice_, 172 F.4th at 432.  The Court addresses Mr. Thornton's allegations as to each Defendant in turn below.

a.    **Nurse Brovold**

Here, Mr. Thornton alleges that Nurse Brovold knew about Mr. Thornton's side effects from taking the crushed Seroquel, and that she responded with deliberate indifference in two ways:  in (1) "refus[ing] to administer Mr. Thornton's Seroquel in a non-crushed form" and (2) "refus[ing] to appropriately pass along a known risk to a licensed physician." (ECF No. 20 ¶¶ 25, 29, 56.)[11]  Mr. Thornton has plausibly alleged that Nurse Brovold knew about his side effects from the crushed Seroquel because he alleges that both he and his mother personally reported them to Nurse Brovold.  (ECF No. 20 ¶¶ 28, 30.)  But Mr. Thornton has not plausibly

---

[11] Mr. Thornton also generally alleges that Nurse Brovold "failed to take any remedial action" after he reported his symptoms to her.  (ECF No. 20 ¶ 25.)  But the Amended Complaint indicates that some remedial actions _were_ taken, although it does not specify who took them.

For instance, Mr. Thornton alleges that "[a]gents of Wellpath and [Piedmont] decided . . . to give Mr. Thornton his medication in the evening, presumably trying to relegate Mr. Thornton's side effects to the nighttime." (ECF No. 20 ¶ 26.)  The decision to administer his crushed Seroquel in the evening reflects a clear "remedial action" taken to mitigate Mr. Thornton's side effects.  That Mr. Thornton disagreed with that decision or felt that it was inadequate does not create a constitutional violation. _See Harvey v. Hobbs_, No. 1:20-cv-605 (TSE), 2021 WL 3641462, at *5 (E.D. Va. Aug. 17, 2021) (citing _Wright v. Collins_, 766 F.2d 841, 849 (4th Cir. 2021)) ("Plaintiff's disagreement over the course of treatment is insufficient to establish deliberate indifference.").

15

alleged that in refusing to administer the Seroquel in a non-crushed form or failing to consult a physician about his symptoms, Nurse Brovold's actions posed an unjustifiably high risk of harm and that she knew or should have known that her actions posed such harm.

First, Mr. Thornton fails to allege that Nurse Brovold's "refusal" to administer his Seroquel in a non-crushed form amounts to deliberate indifference. Mr. Thornton cites no authority that a challenge to the *form* in which medication is administered in and of itself amounts to deliberate indifference. To the contrary, neither a detainee's challenge to the type of care he receives, *see Harvey v. Hobbs,* No. 1:20-cv-605 (TSE), 2021 WL 3641462, at *5 (E.D. Va. Aug. 17, 2021), nor the "method of administering medication" rise to the level of deliberate indifference, *Tyler v. Wilks*, No. 9:22-cv-511, 2023 WL 9289554, at *4 (D.S.C. Sept. 29, 2023) (rejecting deliberate indifference claim where plaintiff challenged the crushing of his medication after a crush order was implemented to prevent him from hoarding medication), *report and recommendation adopted* 2024 WL 185620 (D.S.C. Jan. 17, 2024); *see also Williams v. Fouts-Sneed*, No. 2:19-cv-67, 2024 WL 3297511, at *14 (S.D.W. Va. June 12, 2024), *report and recommendation adopted* 2024 WL 3297492 (S.D.W. Va. July 3, 2024) (finding that plaintiff's deliberate indifference claims based on the crushing of his medication amounted to "nothing more than his own disagreement with the judgment of his medical providers" and was insufficient to establish deliberate indifference).

Moreover, even assuming that administering crushed medication *could* amount to deliberate indifference, Mr. Thornton does *not* allege that *Nurse Brovold* knew or should have known that continuing to administer Seroquel in a crushed form would pose an unjustifiably high risk of harm to Mr. Thornton. *See Rice*, 172 F.4th at 432; *Hurley v. Corbin*, No. 7:24-cv-00605, 2025 WL 1962120, at *4 (W.D. Va. July 16, 2025) (finding plaintiff failed to state a claim for

16

deliberate indifference based on his crushed medication where the plaintiff did not allege that any of the defendants "knew or should have known that crushing the medication posed an unjustifiably high risk of harm"). At best, the Amended Complaint alleges that "it was apparent to *Defendants* that Mr. Thornton's Seroquel should not have been taken crushed, and that serving Mr. Thornton this crushed medication was causing serious and life-threatening side effects." (ECF No. 20 ¶ 51.) But this *generalized* allegation is insufficient to show that *Nurse Brovold* knew or should have known that continuing to administer Seroquel crushed would create an unjustifiably high risk of harm. *See Rice*, 172 F.4th at 432. ("[A plaintiff's] allegations must be particular enough to allow one to infer what each defendant did and knew. Lumping defendants together won't do.") (citing *Iqbal*, 556 U.S. at 678–79).

Mr. Thornton's allegation that Nurse Brovold's failure to consult a physician amounts to deliberate indifference fares no better. Mr. Thornton provides no authority that a nurse's failure to relay to a doctor relatively routine symptoms like those presented here—fatigue, dizziness, light headedness, and feeling off balance—amounts to deliberate indifference. To the contrary, case law from within the United States Court of Appeals for the Fourth Circuit suggests that a nurse's failure to "pass on" information to a doctor, even when doing so results in a serious misdiagnosis or injury, does not rise to the level of *deliberate indifference. See Hinchman v. Winters*, No. 2:10-cv-99, 2011 WL 3205366, at *9 (N.D.W. Va. July 27, 2011) ("[T]he plaintiff's allegations, taken as true, fail to establish deliberate indifference on the part of HSA Gheen or Nurse Perkins. At worst, they misdiagnosed the plaintiff and failed to pass on information to Dr. Winters. As such, their alleged actions may rise to the level of negligence."); *Morrison*, 2021 WL 4055160, at *4 ("He feels that he should have been examined by the doctor prior to any adjustments being made to his medication. However, although the Constitution does

17

require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. Prison officials implement the type and amount of medical treatment given to each prisoner at their discretion.") (citations and quotations omitted).[12] That Nurse Brovold did not communicate Mr. Thornton's side effects to a doctor does not meet the "very high standard" necessary to prevail on a deliberate indifference claim. *Grayson*, 195 F.3d at 695.

In sum, Mr. Thornton has failed to plausibly allege that Nurse Brovold's "refusal to administer [his] Seroquel in a non-crushed form" or to "appropriately pass along" his side effects to a physician amount to deliberate indifference.

### b.    Nurse Lewis

Mr. Thornton contends that Nurse Lewis acted with deliberate indifference in three ways: in (1) signing his Clearance Form, (ECF No. 57, at 9), and, as with Nurse Brovold, (2) "refus[ing] to administer Mr. Thornton's Seroquel in a non-crushed form," (ECF No. 20 ¶ 56), and (3) "refus[ing] to appropriately pass along a known risk to a licensed physician," (ECF No. 20 ¶ 56). None of these actions or inactions amount to deliberate indifference.

Mr. Thornton first argues that Nurse Lewis acted with deliberate indifference because she signed Mr. Thornton's Clearance Form, which required checking a box indicating that he was

---

[12] In some (distinguishable) circumstances, a nurse's refusal to consult with a physician or withhold care can amount to deliberate indifference. *See Dallas v. Craft*, No. 3:21-cv-349 (DJN), 2022 WL 2079312, at *14–15 (E.D. Va. June 9, 2022) (noting that a "prison medical provider who serves as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if [he or] she delays or refuses to fulfill that gatekeeper role") (quotation omitted).

Here, although Mr. Thornton alleges that Defendants "refus[ed] to appropriately pass along a known risk to a licensed physician," (ECF No. 20 ¶ 56), Mr. Thornton never alleges that he requested treatment from a physician. (ECF No. 55, at 7.)

not "tak[ing] medication that [made] him dizzy or drowsy," (ECF No. 20-1), even though she knew or should have known that Mr. Thornton was taking crushed Seroquel and that he suffered from these symptoms. (*See* ECF No. 57, at 9.) This argument fails for two reasons.

First, the Amended Complaint is bereft of any allegations that *Nurse Lewis* knew or should have known about Mr. Thornton's side effects, let alone that she knew he was taking Seroquel, or that he was taking it in a crushed form.[13] Nevertheless, in his response in opposition to the Motion, Mr. Thornton argues that Nurse Lewis "either knew or should have known that [Mr. Thornton] complained of dizziness, balance issues, or other cognitive physical deficits due to the documentation in his medical record from *November 2022*." (ECF No. 57, at 9 (emphasis added); *see also* ECF No. 20 ¶ 30.) But the documentation in Mr. Thornton's medical record could not have put Nurse Lewis on notice of Mr. Thornton's side effects because it was entered on November 12, 2022, (ECF No. 20 ¶ 30), over a month *after* Nurse Lewis signed and approved Mr. Thornton's Clearance Form on October 3, 2022, (ECF No. 20-1, at 1).

Second, Mr. Thornton provides no authority that approving a pretrial detainee for work clearance—particularly where, as here, the detainee also signs the form—creates an "unjustifiably high risk of harm." *Short*, 87 F.4th at 611. On the instant facts, and given that Mr. Thornton has failed to allege Nurse Lewis knew or should have known about Mr. Thornton's side effects, the Court cannot find that Nurse Lewis' approval of Mr. Thornton's Clearance Form rises to the level of deliberate indifference.

---

[13] The Amended Complaint does allege that the "[Clearance Form] was issued in spite of [Mr. Thornton] warning *Wellpath and [Piedmont]* about the serious physical side effects he was suffering as a result of having his medication crushed for several months." (ECF No. 20 ¶ 33 (emphasis added).) Mr. Thornton provides no details about who specifically he warned, how he conveyed those warnings, or what he said. Without specific allegations about what Nurse Lewis knew or should have known, Mr. Thornton's claim fails. *Rice*, 172 F.4th at 432.

Finally, Mr. Thornton also argues, as he did with respect to Nurse Brovold, that Nurse Lewis' "refusal to administer Mr. Thornton's Seroquel in a non-crushed form" and to "appropriately pass along" his side effects to a licensed physician "evince[s] a deliberate indifference towards Mr. Thornton's objectively serious medical needs." (ECF No. 20 ¶ 56.) These claims fail as to Nurse Lewis for the same reasons they fail as to Nurse Brovold. *See supra* Section III.A.3.a.[14]

In sum, Mr. Thornton has failed to allege that Nurse Lewis acted with deliberate indifference to his serious medical needs in signing the Clearance Form, refusing to administer Seroquel in a non-crushed form, or failing to pass along his symptoms to a physician.

### 4.    *Short* Element 4:  Mr. Thornton Has Not Alleged That He Was Harmed as a Result of Defendants' Actions

Under the fourth and final *Short* element, Mr. Thornton must show that he was harmed "as a result" of Nurses Brovold and Lewis' actions. *Short*, 87 F.4th at 611; *see also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation."). Defendants argue that Mr. Thornton's injuries are not the "result" of their action or inaction, but rather the product of a routine slip-and-fall, which courts in this district and across the Fourth Circuit have routinely held do not rise to a constitutional violation. *See Williams v. Meirs*, No. 1:16-cv-1330, 2017 WL 2684014 (AJT), at *3 (E.D. Va. June 19, 2017); *Gray v. Hackworth*, No. 3:20-cv-195 (HEH), 2020 WL 6370986, at *2 (E.D. Va. Oct. 29, 2020) (collecting cases). The Court agrees.

---

[14] These claims also fail as to Nurse Lewis because, unlike his claims as to Nurse Brovold, Mr. Thornton makes no specific factual allegations as to Nurse Lewis on these issues. To the contrary, the Amended Complaint is bereft of a *single* factual allegation about Nurse Lewis, including specific allegations to support the claim that *Nurse Lewis* "refus[ed] to administer Mr. Thornton's Seroquel in a non-crushed form" and to contact a physician. (ECF No. 20 ¶ 56 (alleging that "*Defendants*" engaged in such action)); *see Rice*, 172 F.4th at 432.

20

Despite Mr. Thornton's general allegations about his symptoms—that the crushed Seroquel made him dizzy and lightheaded, for instance—the Amended Complaint does not allege that he suffered from any of those symptoms on the evening of his injury. To the contrary, Mr. Thornton alleges only he "slipped on the slick floor" while cleaning the hallway. (ECF No. 20 ¶ 41; *see* ECF No. 20-2, at 22:44:00–10 (video footage capturing Mr. Thornton slipping on a puddle).) Because Mr. Thornton does not allege that he suffered any symptoms of the crushed Seroquel on the night that he fell, or that those symptoms in any way contributed to his fall, Mr. Thornton has not alleged that his fall and the subsequent injuries were the "result" of any action or inaction on the part of Nurses Brovold or Lewis. The Court is sympathetic to the significant injuries that Mr. Thornton endured and continues to endure, but his injuries—in his own words—are the product of "slip[ing] on the slick floor." (ECF No. 20 ¶ 41.)

In sum, Mr. Thornton has not shown that he suffered from a serious medical condition, that Nurses Brovold and Lewis knew or should have known about the condition but responded with deliberate indifference, or that their actions or inactions harmed Mr. Thornton. Mr. Thornton's deliberate indifference claim against Nurses Brovold and Lewis in Count I fails, and the Court will dismiss Count I as to both Defendants.

**B.      Counts III and IV:  The Court Will Decline to Exercise Jurisdiction Over Mr. Thornton's Remaining State Law Claims Against Nurses Brovold and Lewis**

The two remaining counts—Counts III and IV—allege state law negligence claims over which the Court does not have original jurisdiction. For the reasons articulated below, the Court

declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367[15] over Mr. Thornton's state law negligence claims.

### 1.    Legal Standard:  Supplemental Jurisdiction After Federal Claims Are Dismissed

Federal district courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as a federal claim.  28 U.S.C. § 1367(a).  A district court, however, may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, state claims generally should be dismissed as well).

"The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("The doctrine of

---

[15] 28 U.S.C. § 1367 provides, in relevant part:

> (a) [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction over a claim that they form part of the same case or controversy.
> . . .

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction.

28 U.S.C. §§ 1367(a), (c)(3).

supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away."). Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

### 2. The Court Will Decline to Exercise Supplemental Jurisdiction Over Mr. Thornton's Remaining State Law Claims

Although the Court has unbridled discretion in deciding whether to exercise supplemental jurisdiction in this case, *Carlsbad Tech., Inc.*, 556 U.S. at 639, the Fourth Circuit advises that the Court *should* consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110. An evaluation of these four factors uniformly favors dismissal.

As to the federal policy factor, none of the remaining counts directly involve federal policy. All remaining counts allege causes of action under Virginia law.

The Court's consideration of comity and judicial economy likewise favor dismissal. Mr. Thornton's remaining claims—as well as Nurses Brovold and Lewis' affirmative defense that the statute of limitations has run—rely entirely upon Virginia law. Allowing a state court to address state law matters would best serve judicial economy.

Fairness and convenience to the parties also weigh in favor of the Court declining supplemental jurisdiction. This case remains in an early stage of litigation. The Court has not decided any disputed state-law-based claims. The Court has not entered any discovery orders, and no matters will remain under consideration after this Court issues its decision. Were Mr. Thornton to subsequently file his claims in a court of appropriate jurisdiction, the parties would,

23

for all intents and purposes, begin at the same stage of the litigation process. Accordingly, the Court's consideration of the convenience to the parties also favors dismissal.

Because all relevant factors weigh against exercising supplemental jurisdiction, the Court will decline to do so here. *See, e.g., Ruttenberg v. Jones*, 603 F. Supp. 2d 844, 873 (E.D. Va. 2009), *aff'd*, 375 F. App'x 298 (4th Cir. 2010) (declining to exercise supplemental jurisdiction over state law claims after dismissing all federal claims in § 1983 action). The Court will dismiss Counts III and IV as to Nurses Brovold and Lewis.

### V. Conclusion

For the reasons articulated above, the Court will grant the Motion to Dismiss, (ECF No. 54), and dismiss Nurses Brovold and Lewis from this action.

An appropriate Order shall issue.

Date: 8/4/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

24